**NO. 24-6668**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

BRIAN WRIGHT
PLAINTIFF-APPELLANT
V.
GERARDO TALAMANTES, ET AL.,
DEFENDANTS -APPELLEES.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
NO. 4:21-CV-00257-JGZ
HONORABLE JENNIFER ZIPPS

---

**APPELLEE WOOLRIDGE'S ANSWERING BRIEF**

---

Tom Slutes
4801 E. Broadway Blvd., Suite 301
Tucson, Arizona 85711
Telephone: 520-289-8410
Email: tslutes@sluteslaw.com
*Attorney for Appelle Woolridge*

i

## TABLE OF AUTHORITIES

TABLE OF AUTHORITIES……………………………………………………...ii

SUMMARY OF ARGUMENT………………………………………………….1

ARGUMENT………………………………………………………………….6

   I.    There is No Question that the Qualified Immunity Defense is Available to Dr. Woolridge……………………………………………………7

   A. History of Qualified Immunity…………………………………………7

   B. Richardson and its Policy Considerations …………………………..5

   1. Policy Considerations………………………………………………..7

   C. Other Court Circuit Decisions…………………………………………...10

   II.    Dr. Woolridge is Entitled to Qualified Immunity as Appellants Have Not Identified a Clearly Established Right…………………………….12

CONCLUSION……………………………………………………………...16

## TABLE OF AUTHORITIES (CONTINUED)

CASES:

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)…………………………………………13

*Ballentine v. Tucker*, 28 F.4th 54 (9th Cir. 2022)……………………………12, 13

*Bartell v. Lohiser*, 12 F. Supp. 2d 640 (1998)………………………………………..9

*Bartell v. Lohiser*, 215 F.3d 550 (6th Cir. 2000)…………………………………10

*Chauncey v. Evans*, No. 201-CV-0445, 2003 WL 21730580……………………..10

*District of Columbia v. Wesby,* 583 U.S. 48 (2018)…………………………..12, 13

*Dunn v. Castro*, 621 F.3d 1196 (9th Cir. 2010)………………………………..1, 12

*Estate of Henson* 2008 WL 3287098………………………………………………..10

*Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848 (10th Cir. 2021)………………..10

*Filarsky v. Delia*, 566 U.S. 377 (2012)…………………………....1, 3, 4, 5, 6, 7, 11

*Jensen v. Lane Cnty.*, 222 F.3d 570 (9th Cir. 2000)………………………7, 8, 9, 11

*Jones v. County of Los Angeles*, 802 F.3d 990 (9th Cir. 2015)…………...14, 15, 16

*Jones v. Cnty. of Los Angeles*, 722 F. App'x 634 (9th Cir. 2018)…………………16

*Kisela v. Hughes*, 584 U.S. 100 (2018)………………………………………...13

*Mann v. Cnty. of San Diego*, 2013 WL 4046642 (S.D. Cal. Aug. 8, 2013)………15

*Mann v. Cnty. of San Diego*, 907 F.3d 1154 (9th Cir. 2018)……………..14, 15, 16

*Moore v. Garnand*, 83 F.4th 743 (9th Cir. 2023)…………………………………13

*Nicholson v. City of Los Angeles*, 935 F.3d 685 (9th Cir. 2019)…………………..13

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154 (9th Cir. 2009)……15

*Perniciaro v. Lea*, 901 F.3d 241 (5th Cir. 2018)………………………………1, 11

*Richardson v. McKnight*, 521 U.S. 399 (1997)……………...1, 4, 5, 6, 7, 8, 9, 11

*Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir.1975)………………………………………………………………….15

*Sharp v. Cnty. of Orange*, 871 F.3d 901 (9th Cir. 2017)…………..….1, 2, 12, 13

*The Est. of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098 (10th Cir. 2016)………………………………………………………………….10

*Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000)………………………...14, 15, 16

*Wyatt v. Cole*, 504 U.S. 158 (1992)………………………………………………..4

STATUTES:

42 U.S.C. § 1983………………………………………………………...…3, 6, 7

A.R.S. § 13-3620…………………………………………………………..8

iv

## SUMMARY OF ARGUMENT

The qualified immunity defense is available to Dr. Woolridge because, like the physician defendants in *Perniciaro v. Lea*, 901 F.3d 241 (5th Cir. 2018), his "public counterparts would be entitled to assert qualified immunity." *Id.* at 252. *See also Filarsky v. Delia*, 566 U.S. 377 (2012). The purposes for extending qualified immunity laid out in *Richardson v. McKnight*, 521 U.S. 399 (1997), also weigh in Dr. Woolridge's favor: (i) preventing unwarranted timidity in the exercise of official duties; (ii) ensuring that highly skilled candidates are not deterred from public service; and (iii) protecting public employees from litigation distractions.

Not only is the qualified immunity defense available to Dr. Woolridge, but he is also entitled to assert qualified immunity because Appellants have failed to identify clearly established law that indicates that a doctor acts in violation of the constitution by conducting an FME at the request of law enforcement to ascertain whether a child's injury is the result of child abuse. To find a clearly established right, the court must consider the right at issue in a particularized sense, rather than "as a broad general proposition." *Dunn v. Castro*, 621 F.3d 1196, 1200–01 (9th Cir. 2010). "Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these [officials] in this case that their particular conduct was unlawful. …[T]he prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the

1

relevant jurisdiction." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017). The cases cited by Appellants fail to meet this standard. Therefore, the district court appropriately determined that Dr. Woolridge was entitled to qualified immunity.

## ARGUMENT

### I. There is No Question that the Qualified Immunity Defense is Available to Dr. Woolridge.

#### A. History of Qualified Immunity

In 2012, the Supreme Court decided *Filarsky v. Delia*, a case involving a private attorney employed by a public entity for purposes of conducting an internal investigation into alleged malfeasance by a fire department employee. 566 U.S. 377 (2012). At issue was whether the private attorney was entitled to qualified immunity.

The Supreme Court conducted a common-law analysis of the protections afforded to private citizens executing government responsibilities and concluded that, at common law, core government functions often involved private citizens' active participation and that, accordingly, "common law did not draw a distinction between public servants and private individuals engaged in public service in according protection to those carrying out government responsibilities." *Filarsky*, 566 U.S. at 386. Indeed, it commented that "examples of individuals receiving immunity for actions taken while engaged in public service on a temporary or occasional basis are as varied as the reach of government itself." *Filarsky*, 566 U.S at 389. The Supreme Court concluded that, in addition to the history of immunity for citizens executing public functions, the purposes of affording § 1983 immunity do not counsel "against carrying forward the common law rule." *Filarsky*, 566 U.S at 389. As for the purpose of qualified immunity, the Supreme Court noted:

3

As we have explained, such immunity "protect[s] government's ability to perform its traditional functions." *Wyatt v. Cole*, 504 U.S. 158 (1992). It does so by helping to avoid "unwarranted timidity" in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits. *Richardson v. McKnight*, 521 U.S. 399, 409-411(1997).

*Filarsky*, 566 U.S at 389-90; *see Richardson*, 521 U.S. 399, 400-411. The Supreme

Court concluded that qualified immunity's purposes are equally implicated whether

the individual facing suit is a state actor working full-time or an individual working

for the state on some other basis. *See Filarsky*, 566 U.S. at 390.

We have called the government interest in avoiding "unwarranted timidity" on the part of those engaged in the public's business "the most important special government immunity-producing concern." .... Ensuring that those who serve the government do so "with the decisiveness and the judgment required by the public good,", is of vital importance regardless whether the individual sued as a state actor works full-time or on some other basis.

Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to "'ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service.'" The government's need to attract talented individuals is not limited to full-time public employees. Indeed, it is often when there is a particular need for specialized knowledge or expertise that the government must look outside its permanent work force to secure the services of private individuals. * * * *

Sometimes, as in this case, private individuals will work in close coordination with public employees, and face threatened legal action for the same conduct.... Because government employees will often be protected from suit by some form of immunity, those working alongside them could be left holding the bag -- facing full liability for actions taken in conjunction with government employees who enjoy immunity for the same activity. Under such circumstances, any private individual with a choice might think twice before accepting a government assignment.

4

> The public interest in ensuring performance of government duties free from the distractions that can accompany even routine lawsuits is also implicated when individuals other than permanent government employees discharge these duties. Not only will such individuals' performance of any ongoing government responsibilities suffer from the distraction of lawsuits, but such distractions will also often affect any public employees with whom they work by embroiling those employees in litigation.
>
> *Filarsky*, 566 U.S. at 390-92 (internal citations omitted).

Similarly, Dr. Woolridge was carrying out governmental responsibilities by collecting evidence for an investigation of child abuse on behalf of law enforcement and DCS. [2 ER 284-285.] The Plaintiffs do not allege that Dr. Woolridge was doing so with malice or in bad faith. There is no dispute that a doctor employed directly by law enforcement or DCS on a full-time basis to conduct similar examinations would be entitled to seek the protection of qualified immunity. *See Filarsky*, 566 U.S. at 394-95. Accordingly, the historical common law supports the availability of qualified immunity to Dr. Woolridge.

### B. Richardson and its Policy Considerations

In looking to policy justifications for conferring qualified immunity, *Filarsky* distinguished *Richardson* and carefully confined it to its factual predicate: *Richardson* was a self-consciously "narrow" decision. The Court made clear that its holding was not meant to foreclose all claims of immunity by private individuals. Instead, the Court emphasized that the particular circumstances of that case- "a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government,

undertak[ing] that task for profit and potentially in competition with other firms"-combined sufficiently to mitigate the concerns underlying recognition of governmental immunity under § 1983. *Richardson*, 521 U.S. at 413. However, the *Richardson* Court itself stated that it does not address "a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision." *Richardson*, 521 U.S. at 413. In *Richardson*, the private prison performed its tasks independently, without ongoing direct state supervision, pursuant to Tennessee state statutes exempting private jails from monitoring to which public jails were subject. *Id.* at 409.

*Richardson* considered only the issue of qualified immunity for prison guards employed by and working at a private prison; it explicitly did not consider the more nuanced question of whether a person "briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision" would be entitled to assert qualified immunity. 521 U.S. at 413. That reserved question was then expressly taken up in *Filarsky*, resulting in a different focus to the necessary historical excavation. As described above, the Court in *Filarsky* suggests that where the defendant at issue worked in a governmental entity and alongside government employees, the relevant historical question asks whether someone bearing that relationship to the state would have had

6

immunity at common law, not whether immunity was accorded to purely private persons performing some governmental function. The *Filarsky* Court answered this question in the negative holding that the common law drew no distinction between these types of individuals. *See Id.* at 387.

### 1. Policy Considerations

To determine whether a private actor may assert qualified immunity, courts analyze three purposes served by qualified immunity: (i) "preventing unwarranted timidity in the exercise of official duties"; (ii) "ensuring that highly skilled and qualified candidates are not deterred from public service by the threat of liability"; and (iii) protecting public employees from litigation distractions. *Jensen v. Lane Cnty.*, 222 F.3d 570, 576 (9th Cir. 2000) (citing *Richardson*, 521 U.S. at 408). In *Jensen*, which Plaintiff heavily relies on, the plaintiff sued a psychiatrist under § 1983, for involuntarily confining plaintiff for evaluation, pursuant to state statute, but without probable cause. *Id.* at 573. The psychiatrist worked for a private firm that contracted with the county to provide mental health evaluations to detainees at the county psychiatric hospital. *Id.* The Ninth Circuit held that the defense of qualified immunity was not available to the psychiatrist. *Id.* at 580.

Plaintiff suggests that *Jensen* provides for a colorable argument that qualified immunity might not extend to a private physician such as Dr. Woolridge. However, Dr. Woolridge's role at SACAC is qualitatively different than that in *Jensen.* The

physician in *Jensen* was a contract psychiatrist affiliated with Psychiatric Associates ("PA"), "a privately organized group of psychiatrists providing services to the government pursuant to contract" that conducted "a number and variety of tasks over the term of a three-year contract." *Id.* at 577, 578. PA was "responsible for accepting referrals, making admission and discharge decisions, providing on-going psychiatric care, and participating in at least some hospital policymaking." *Id.* at 578.

Here, the privatization and market forces arguments that the Ninth Circuit found persuasive in *Jensen* and the Supreme Court relied upon in *Richardson* play little to no role. Dr. Woolridge spends a majority of his time at Banner Hospital, in the emergency department and giving lectures to medical students. [3 ER 357.] At SACAC[1], he is a Medical Director and with respect to the state officials, he has one discrete job: to perform a visual examination on children brought to him by law enforcement and to report his findings. [2 ER 284.] Dr. Woolridge carries out 3-4 FMEs per month. [2 ER 284.] He is paid $500 per FME he performs. [3 ER 355.] Dr. Wooldridge has a contract directly with SACAC, to carry out responsibilities pursuant to Pima County Protocols of Multidisciplinary Investigation of Child Abuse, Standards of the National Children's Alliance, and A.R.S. § 13-3620. [2 ER

---

[1] SACAC was created through the agreement of municipal entities for the purpose of conducting forensic interviews and examinations to aid law enforcement in the investigation of child abuse. SACAC has no other function. SACAC is a non-profit and the only identified provider of these types of services in Pima County. [2 ER 284-285.]

284.] The contract to which Dr. Woolridge is a part is not an especially lucrative one involving multiple facets of administration and millions of dollars as in *Richardson* or *Jensen,* but a modest part-time contract to provide medical services at the direction of law enforcement. [3 ER 355.] Competition for such a contract would not be nearly as robust. Moreover, "insurance, indemnification agreements, and higher pay" would appear no more likely to address problems of timidity and discouraging qualified candidates than they would if Dr. Woolridge were a full-time employee of SACAC. Unlike *Jensen* and *Richardson*, there are no other medical providers who would readily organize to replace SACAC to provide FMEs should the threat of liability deter talented private doctors from contracting with SACAC[2].

In *Jensen*, the court said that there is no indication that the services provided by PA could be described as a "discrete public service task." To the contrary, Dr.

---

[2] This policy consideration is further illustrated by *Bartell v. Lohiser*, 12 F. Supp. 2d 640, 646 (1998) later affirmed by the Sixth Circuit. In deciding that private foster care workers are entitled to assert qualified immunity, the district court stated:

In this case, the LSS [Lutheran Social Services of Michigan] defendants were charged with the difficult discretionary task of recommending to the State whether Bartell was fit to parent. Without immunity, the LSS defendants would not be free to make unbiased recommendations. Any time that they were to recommend that a parent's right to the care and custody of his or her child be terminated, they would face the risk of being sued. Faced with this threat, it would not be cost-effective for them to accept contracts with the State. Denying these individuals qualified immunity would deter them from assisting the State in performing an essential governmental function. If private non-profit foster care agencies were not available to contract with FIA, additional burdens would be placed on the State's limited budget.

Woolridge's role with regard to law enforcement officials is clearly a "discrete public service task." He has no role in determining what action should be taken by the state or law enforcement. As such, qualified immunity should be available to a private contractor such as Dr. Woolridge.

### C. Other Court Circuit Decisions

Other courts that have considered the issue have allowed individuals like Dr. Woolridge to assert immunity. *See, e.g., Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000) (qualified immunity available to contract foster child services agency, where a governmental caseworker monitors the appropriateness and sufficiency of the foster care plans). *See also Chauncey v. Evans*, No. 201-CV-0445, 2003 WL 21730580; *Estate of Henson* 2008 WL 3287098 ("The fact that Dr. Bolin is a contract physician does not alleviate his entitlement to the qualified immunity defense"); *The Est. of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1108 (10th Cir. 2016) (holding that a private physician hired to do a hob for which a permanent government employee would have received qualified immunity was entitled to the same); *Est. of Jensen by Jensen v. Clyde,* 989 F.3d 848 (10th Cir. 2021) (Private doctor who worked for county on part-time basis, in providing medical services to inmates at county jail where he worked alongside the jail's officers and full-time staff, had ability to raise qualified immunity defense.

Indeed, the case is also very similar to the matter of *Perniciaro v. Lea*, 901 F.3d 241 (5th Cir. 2018)[3]. There the United States Court of Appeals for the Fifth Circuit discussed whether contract psychiatric health care providers at the Eastern Louisiana Mental Health System (ELMHS) were entitled to qualified immunity holding that physicians who were private individuals who work in a public institution and alongside government employees, but who do so as something other than full-time public employees are entitled to qualified immunity. *Id.* at 259. The Court stated that "it is clear that their public counterparts would be entitled to assert qualified immunity" and therefore "general principles of immunity at common law support the right of Drs. Thompson and Nicholl to raise the defense of qualified immunity. *Id.* at 252.

Like the private contractors in *Perniciaro* and *Filarksy*, here, Dr. Woolridge did not independently operate at SACAC, but rather, served as an adjunct to Pima County in the essential governmental activity of conducting medical examinations

---

[3] The *Perniciaro* Court also noted that while the Ninth Circuit had reached contrary conclusions in *Jensen* they did so before the Supreme Court decided *Filarsky*. Accordingly, the *Jensen* Court followed *Richardson's* lead and framed the relevant question as whether there was a firmly-rooted tradition of immunity for private doctors performing some government-related function, which was distinguished by *Filarsky*. *See Jensen*, 222 F.3d at 576–77; *Richardson*, 521 U.S. at 404, (framing relevant historical inquiry as whether there was a "firmly rooted" tradition of immunity applicable to privately employed prison guards").

in cases of suspected child abuse and acted under close official supervision in doing so, following the county policies and state statutes in place for the medical examinations in such cases. [2 ER 284-285.]

## II.    Dr. Woolridge is Entitled to Qualified Immunity as Appellants Have Not Identified a Clearly Established Right.

"[T]o overcome qualified immunity, Appellants must show that [Dr. Woolridge] (1) 'violated a federal statutory or constitutional right' and (2) 'the unlawfulness of [his] conduct was clearly established at the time.'" *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *District of Columbia v. Wesby,* 583 U.S. 48, 62–63 (2018)). It is within the court's discretion to bypass the first prong and determine qualified immunity applies because the right at issue was not clearly established. *Id.* at 61. To find a clearly established right, the court must consider the right at issue in a particularized sense, rather than "as a broad general proposition." *Dunn v. Castro*, 621 F.3d 1196, 1200–01 (9th Cir. 2010). "Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these [officials] in this case that their particular conduct was unlawful. …[T]he prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction."

12

*Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (citation omitted)[4].

"The Supreme Court has repeatedly stressed that courts must not define clearly established law at a high level of generality." *Moore v. Garnand*, 83 F.4th 743, 749 (9th Cir. 2023) (quoting *Ballentine*, 28 F.4th at 64). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Whether a right is clearly established turns on whether it is "sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating it." *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018)).

---

[4] *Wesby*, 583 U.S. at 63 ("To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority.' It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know. The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' This requires a high 'degree of specificity.' We have repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.') (internal citations omitted).

Here, the Appellant fails to identify clearly established law that establishes that a doctor acts in violation of the constitution by conducting an FME at the request of law enforcement to ascertain whether a child's injury is the result of child abuse. Appellants' citations to *Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 2000) and *Mann v. Cnty. of San Diego*, 907 F.3d 1154 (9th Cir. 2018) do not address the liability of a doctor performing medical examinations on children exhibiting signs of physical abuse. *See Wallis*, 202 F.3d at 1142 (concluding that a genuine issue of material fact existed as to whether the Wallises' constitutional rights were violated by police officers who took custody of their daughters and subjected the children to invasive medical examinations); *Mann*, 907 F.3d at 1167 (concluding that the county's policy of subjecting children to medical exams without parental notification or consent was unreasonable). In fact, in each case, the defendant doctor who performed the medical examination was dismissed from the case. *See Wallis*, 202 F.3d at 1145 (Rymer, P., dissenting) (mentioning the doctor who conducted the exams was dismissed on immunity grounds); *Mann v. Cnty. of San Diego*, 2013 WL 4046642, at *1 (S.D. Cal. Aug. 8, 2013) (District judge mentioned at summary judgment stage that Dr. Graff had been dismissed from the case.) *Jones v. County of Los Angeles*, 802 F.3d

14

990 (9th Cir. 2015), presented by Appellants for the first time on appeal[5], is likewise distinguishable and does not clearly establish the liability of doctor merely performing medical examinations at the request of law enforcement. In that case, Dr. Wang did not merely perform a medical examination at the request of law enforcement as Appellants argue but rather took multiple steps to keep infant G.J. in the hospital for multiple days such as falsely telling the parents of the infant that she wished to perform tests that could not be conducted on an outpatient basis, informed the parents that G.J's injuries were consistent with child abuse, directed a sitter to be placed inside G.J's room to prevent the parents from being alone with their infant, etc. *Id.* at 1001-1002. The Court held that these overt actions constituted unreasonable seizure of a child. *Id.* This is not the case at all with Dr. Woolridge who performed a medical examination of the child at the request of law enforcement and filled out a medical report detailing his findings. [2 ER 288-292.] This completed Dr. Woolridge's involvement, and the child remained in the custody of law enforcement. [Appellant's OB, pg. 7.]

---

[5] Appellants failed to present this argument to the district court and it is therefore forfeited. The rule in this circuit is that appellate courts will not consider arguments that are not "properly raise[d]" in the trial courts. *Rothman v. Hospital Service of Southern California*, 510 F.2d 956, 960 (9th Cir.1975). *See also One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1158 (9th Cir. 2009) (A party normally may not press an argument on appeal that it failed to raise in the district court.)

Even so, this holding was later reversed in *Jones v. Cnty. of Los Angeles*, 722 F. App'x 634, 637 (9th Cir. 2018) (We hold that Dr. Wang is entitled to qualified immunity because in March 2010 there was no clearly established case law that would have provided Dr. Wang with "fair warning" that her actions would violate federal constitutional law.) If anything, Dr. Woolridge would be confident that his actions were reasonable based on the factual circumstances present in *Jones, Mann,* and *Wallis* and the favorable disposition of the medical examiners in those cases.

Because the Plaintiffs have failed to identify any case that would clearly establish a rule of conduct sufficiently definite that any reasonable doctor in Dr. Woolridge's shoes would have understood he was violating it, the District Court appropriately entered judgment in favor of Dr. Woolridge and appropriately dismissed him from the case.

## CONCLUSION

For the reasons set forth above, Appellee Woolridge respectfully requests this Court to affirm the District Court's ruling dismissing Dr. Woolridge from this case.

Date: April 28, 2025                SLUTES, SAKRISON & ROGERS, P.C.

/s/ Tom Slutes
Tom Slutes
Attorney for Appelle Woolridge, M.D.

16

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 28, 2025. Participants in the case who are registerd CM/ECF users will be served via the appellate CM/ECF system.

Respectfully submitted,

/s/ Tom Slutes
Tom Slutes
Attorney for Appellee Woolridge