# No. 24-6668

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Brian Wright,

*Plaintiff-Appellant,*

v.

Gerardo Talamantes, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Arizona
No. 4:21-cv-00257-JGZ
Hon. Jennifer Zipps

## APPELLANT'S MEMORANDUM IN OPPOSITION TO DCS APPELLEES' MOTION TO MAINTAIN UNDER SEAL DOC. NO. 22

Michael Garth Moore (023742)
6336 North Oracle Road Suite 326 #119
Tucson, Arizona 85704
Telephone: 520-437-9440
Email: mike@mgmoorelaw.com

*Attorney for Appellant Brian Wright*

Appellees move this Court to maintain documents under seal based entirely on confidentiality conferred under state law. The argument ignores the presumption of openness of court proceedings and this Court's authorities laying down the heavy burden a party must meet to warrant closing the doors to the public on evidence of misconduct by agents of a state agency delivering critical services to the public. The Motion should be denied.

## ARGUMENT OF LAW

### I. The Appellees Have Forfeited the Right to Seal the Documents by Their Publication of the Contents of the Documents

It is hardly necessary to observe that it is not the *document* to which confidentiality attaches, but the *content* of the document. If the content is in the public domain, sealing the document is an exercise in futility. Throughout the summary judgment proceedings below, these Appellees publicized much of the material they now ask this Court to seal. Of course, they put in the public domain only that evidence they felt favored their version of the facts. The Court's attention is directed to State Defendants' Separate Statement of Facts in Support of Motion for Summary Judgment, Doc. 307, found at 2 ER 0255-272. Here, Appellees not only described contents of the Department file, but they also quoted entire passages from it. Nor did they stop there. They publicized substantial parts of the proceedings of the Dependency Case, again, quoting substantial passages from the

2

confidential proceedings. This Court will see that Appellees, among other sensitive facts, publicized the child's medical condition, including facts surrounding his hospitalization while in custody of the Department.

DCS Defendants' Response to Plaintiffs' Partial Motion for Summary Judgment and Cross-Motion for Summary Judgment Regarding Judicial Deception Claims, Doc. 375, continued the public disclosures. Appellees, again, quoted extensively from the documents they now argue must remain under seal, including selected passages from the very documents which Brian Wright asserts contained material falsehoods and omissions. Once again, Appellees publicized only those facts which they argue favor their position.

Appellees, it is respectfully submitted, have forfeited the right to argue the entirety of the documents must be shielded from public view. Even if this wholesale publication does not forfeit the right to oppose unsealing, Appellees have failed to make the case.

**II. This Court's Decisions Establish a Heavy Burden on Appellees to Prove the Contents of Volume 4 of the Excerpts of Record be Maintained Under Seal**

As this Court is aware from the facts set out in Appellant's Opening Brief, Brian Wright has presented evidence that the two Appellees, Gerardo Talamantes and Meaghan Francisco, collaborated to falsify two documents submitted to Arizona juvenile judges: (1) an *ex parte* Application for Court Authorized Removal

3

of Brian's six (6) year old son, 4 ER 660-663; and (2), an *ex parte* Dependency Petition, 4 ER 601-626, seeking affirmance of the Talamantes and Francisco's physical separation of parent and child, as well as stripping Brian of his legal custody and all authority to make decisions about his son's health, education and life. Both orders sought were executed by the judges based entirely on alleged facts presented by the Appellees.

The issues presented are without question the kind of misconduct that is clearly a matter of public interest and public concern.

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commnc'ns Inc.,* 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978). Following the Supreme Court's lead, this Court has recognized that "We start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003). The presumption of access is "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo (Amodeo II),* 71 F.3d 1044, 1048 (2d Cir. 1995); *see also Valley Broad. Co. v. U.S. Dist. Court*—D. Nev., 798 F.2d 1289, 1294 (9th Cir. 1986) (explaining that

the presumption of public access "promot[es] the public's understanding of the judicial process and of *significant public events*") (emphasis added).

The First Amendment right of citizen access to the courts is the bedrock of this presumption as this Court discussed in *Civ. Beat Law Ctr. for the Pub. Int., Inc. v. Maile,* 113. F. 4th 1168, 1174-76 (9th Cir. 2024). This Court defined the appropriate analysis, declared the "experience and logic test," as follows:

> To determine whether the First Amendment grants the public a presumptive right of access to a judicial proceeding or record, we consider (1) whether that proceeding or record has historically been open to the press and general public and (2) whether public access plays a significant positive role in the functioning of the particular governmental process in question. And, even where a presumptive First Amendment right of public access attaches to a proceeding or record, this establishes only a strong presumption of openness, and 'the public still can be denied access if closure is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest.

*Id.,* at 1175-1176 (cleaned up, citations omitted).

This Court imposes on the party seeking to seal the record the burden to prove up that justification. As discussed, *infra,* the Department's records do not qualify for that narrow exception to disclosure as records traditionally shielded from public scrutiny.

What happened to Brian Wright's son, and Brian, was public, indeed. As the facts show, police officers showed up at the son, LAW's, elementary school, interrogated and photographed him in the school offices, walked him to a police cruiser in full view of students and staff and drove him away, delivered him to the

5

Southern Arizona Child Advocacy Center where he was subjected to a "forensic interview" and "forensic medical examination," after which police cruisers appeared outside the family home on a pleasant *cul de sac* in a development of single family homes and a team of officers searched the home, conducted checks on the other children, and questioned both parents. When LAW was taken by Talamantes and Francisco from the home two weeks later on the authority of the *ex parte* CAR, that was a public display, as there was a confrontation initiated by one of the DCS agents, in public, with neighbors watching. DCS's custody and control were then publicly demonstrated to school officials, doctors, and hospitals, at the first removal and over the next months. What happened was anything but private.

Indeed, the public interest in this case is hardly speculative. A representative of the media filed a Motion to Intervene, stating that

> The public has a significant interest in monitoring and understanding proceedings related to the processes and actions of the Arizona Department of Child Protective Services and its contractors and "partners" as well as how the courts handle disputes involving same.

Doc. 291, p. 2.

The District Court denied the Motion. Doc. 299.

Because of the fundamentally open nature of federal court proceedings, this Court has held that "[a] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Ctr. for Auto Safety v. Chrysler Group, LLC,* 803 F.3d 1092, 1096 (9th

6

Cir. 2016), quoting *Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir 2006).

A party must satisfy the compelling reasons standard even if the motion, or its attachments, were previously filed under seal or protective order. *Foltz,* 331 F.3d at 1136 ("[T]he presumption of access is not rebutted where . . . documents subject to a protective order are filed under seal as attachments to a dispositive motion."). A movant's failure to meet the burden of *articulating specific facts* showing a "compelling reason" means that the "default posture of public access prevails." *Kamakana*, 447 F.3d at 1182 (emphasis added).

Meeting this strict standard requires the movant to present evidence to demonstrate the articulable facts that support the compelling reason *as to the content of each document.* A blanket assertion of the right to seal is insufficient. *Kamakana,* 447 F.3d at 1185. Indeed, the movant *must* supply this evidence, because the court, when presented with such a motion, is *required* to "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995); *Phillips v. Gen. Motors*, 307 F.3d 1206, 1212 (9th Cir. 2002).

Appellees do not even provide the barebones arguments that led this Court, in *Kamkana,* to conclude that "These conclusory offerings do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents."

7

*Id.,* at 1185.

It is true that a narrow range of documents is not subject to the presumption of public access because the records have "traditionally been kept secret for important policy reasons." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). In *Kamakana,* this Court held that only two types of documents that fall within this extraordinary category: grand jury transcripts and warrant materials *in the midst of a pre-indictment investigation*. *Kamakana,* 472 F.3d at 1178 (emphasis added). In the more recent *Civ. Beat* decision, this Court reaffirmed *Kamakana's* holding.

*Civ. Beat* is particularly relevant here, because this Court struck down a Hawai'i Court Records Rule which applied to all criminal and civil proceedings in Hawai'i state courts and required that all "medical and health records" be filed under seal without further order of a judge. In so doing, this Court reaffirmed that only "proceedings or records [which] implicate[] pre-indictment warrants, grand jury proceedings, or criminal discovery, or would otherwise imperil ongoing criminal investigations" are those proceedings and materials traditionally kept secret. *Id.,* 113. F 4th at 1177 (cleaned up).

8

Appellees' first argument for sealing these documents is that they qualify for the *Kamakana* exception.[1] Both *Kamakana* and *Civ. Beat* stand in opposition to this position. Neither the Department processes, nor a Dependency Case, has any similitude to the criminal proceedings to which the exception applies.

This Court may, and should, deny the Motion simply because Appellees have failed to (1) even address the contents of any of the documents, let alone a compelling interest in preservation of secrecy; and (2), have failed to identify how the public disclosure of all or part of the content of any document will result specific, articulable harm to anyone. What was written in *Morshed v. County of Lake,* in which the state sought sealing of records based entirely on state law confidentiality, is equally applicable here:

> [T]he investigations and conduct described in the documents all took place several years ago and do not appear to be the subject of any active civil or criminal proceedings other than these. That these documents might prove embarrassing for either party is simply not a legitimate reason for closing the doors to the courthouse.

2014 U.S. Dist. LEXIS 59486 at *8 (N.D. Cal., April 29, 2014).

---

[1] The Appellees' reliance on the trial Court's order at Doc. 341 is unavailing. First, this Court gives no deference to a "preliminary ruling" [Doc. 341, at p. 4] by a trial Court. Further, the trial Court's sole basis for requiring sealing, that "The exhibits relating to child-protection proceedings at issue here are plainly records 'traditionally kept secret'" [Id., at p. 5] is an unfortunate and fundamental misreading of *Kamakana* and *Civ. Beat.*

9

That contents of the documents may well prove embarrassing to Talamantes, Francisco or the Department, then, is not a justification for denying the public access in a federal civil rights case.

### III. The Interest at Stake and The Status of Brian Wright as a Private Attorney General Support Unsealing

Talamantes and Francisco claim to be protecting "[t]he privacy interests of the child." Motion, at 5. But confidentiality of DCS records under Arizona law was only enacted in order for the Department to qualify to receive federal funds, which it does in the tens of millions every year. A.R.S. §8-807(A). But the right to privacy accrues under federal law not to the State. 42 U.S.C. §5106a(b)(2)(B)(viii) mandates confidentiality "in order to protect the rights of the child and of the child's parents or guardians,…." The right, then, accrues to the child and parent. That right can be waived. Brian Wright, on behalf of himself and as personal representative of his son has evidenced that the right is waived, both in the trial Court, and in this appeal.[2] Hence, there is no party with any cognizable interest in opposing unsealing of the documents.

Further, Brian Wright's standing is not merely that of a private individual. Enacting the private action provision of Section 1983, Congress elevated the

---

[2] Indeed, the child enjoys full protection of his personally identifiable information through the redactions made pursuant to Fed.R.Civ.Pro 5.2. Unsealing the documents still maintains that privacy interest.

10

plaintiff's interest beyond that of a citizen in a private dispute. As the Supreme Court stated in the unfortunately titled case of *Newman v. Piggie Park Enterprises Inc.*, 390 U.S. 400, 402 (1968) , 390 U.S. 400, 402, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968), "If a [civil rights] plaintiff obtains relief, he does so not for himself alone, but also as a private attorney general, *vindicating a policy that Congress considered of the highest priority*." (cleaned up, emphasis added); *Youngblood v. Gates*, 112 F.R.D. 342 (C.D. Cal. 1985) (it is of special import that cases brought under Section 1983 be resolved by a determination of the truth rather than the truth be hidden). "Even when unsuccessful, such suits provide an important outlet for resolving grievances in an orderly manner and achieving nonviolent resolutions of highly controversial, and often inflammatory, disputes." *Harris v. Maricopa County Superior Court,* 632 F. 3d 963, 971 (9th Cir. 2011).

Congress' creation of the private attorney general enforcement mechanism must lend added weight to the consideration by this Court of this pivotal issue for nonviolent resolutions of such controversial action as *ex parte* stripping of parental custody and control of children. Indeed, the data reveals that Arizona's child welfare system is in crisis. According to U.S. Census Bureau data, last published January 2024 by the National Coalition for Child Protection Reform, THE NCCPR BIG CITY RATE OF REMOVAL INDEX, DCS removals of children living in poverty and then being placed in foster care in Phoenix "is extreme" compared to

11

the other nine largest metropolitan areas in the United States. Any disclosure which brings to light the processes and practices of this agency does great service to the public. Which is precisely why Brian Wright filed and prosecuted this case over the last five (5) years.

## CONCLUSION

For the reasons set forth above, Brian Wright asks this Court to Order that Volume 4 of the Excerpts of Record be entered in the public record of this Case.

Respectfully submitted,

*/s/Michael Garth Moore*
Michael Garth Moore (023742)
6336 North Oracle Road Suite 326 #119
Tucson, Arizona 85704
Telephone: 520-437-9440
Email: mike@mgmoorelaw.com

*Attorney for Appellant Brian Wright*

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 7, 2025. Participants in the case who are registered CM/ECF users will be served via the appellate CM/ECF system.

      Respectfully submitted,

      */s/Michael Garth Moore*
      Michael Garth Moore (023742)

      *Attorney for Appellant*